Rydel V. Peterson

RVP LAW, PLLC

17050 Scheffer Lane

Frenchtown, MT 59834

Telephone: (406) 239-2500

Email: rydel@rvplegal.com

*Attorney for Plaintiff*

*Jason A. Thommen*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| JASON A. THOMMEN<br><br>    Plaintiff,<br><br>    vs.<br><br>James Hardie Building Products Inc.,<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT AND JURY DEMAND** |

Jason A. Thommen for his Complaint against James Hardie Building Products Inc. ("James Hardie"), states as follows:

1

## PARTIES AND JURISDICTON

1. Mr. Thommen is a citizen of the State of Montana. He resides in Missoula County, Montana.

2. James Hardie is a Nevada corporation, with its principal place of business in Chicago, Illinois. James Hardie is registered to do business in the State of Montana.

3. This court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332, as the parties are completely diverse in their citizenship and the amount in controversy exceeds $75,000.

4. Venue is proper pursuant to Local Rule 3.2(b) of the United States District Court for the District of Montana.

## FACTS

5. James Hardie is a producer and marketer of fiber cement and fiber gypsum building solutions. James Hardie employs approximately 4,800 employees across operations in North America, Europe, Australia, New Zealand, and the Philippines.

6. Mr. Thommen began his employment with James Hardie in 2007 as an Installation Specialist covering a territory spanning from Spokane, WA, the entirety of Montana, to Minot, ND and northeast Wyoming.

7. Mr. Thommen's primary duties as a James Hardie Installation Specialist were to interact with customers on site or at conventions or trade shows, to demonstrate how James Hardie products were to be properly installed and the various uses for them.

8. Mr. Thommen excelled in his positon and was rewarded with a promotion by James Hardie in 2010.

9. In addition to maintaining his role as the James Hardie Installation Specialist, Mr. Thommen was tasked with the marketing and sales of James Hardie's products within the same territory.

10. Mr. Thommen remained in this position until his termination on August 28, 2020.

11. In its termination letter, James Hardie cited two reasons for the termination of Mr. Thommen. (Ex. 1)

12. The cited violations were non-adherence to the "Zero Harm – COVID-19 Health and Safety" policy and James Hardie "Cost Controls." (*Id.*)

13. James Hardie claimed that Mr. Thommen became aware of his possible exposure to a positive case of COVID-19 on August 14, 2020 and that after that knowledge he continued to meet with James Hardie customers the week of August 17, thereby violating the James Hardie COVID-19 protocol. (*Id.*)

14. Mr. Thommen was on a vacation starting August 10, 2020 and was scheduled to return to work on August 24, 2020.

15. Mr. Thommen's two week vacation was approved by his supervisor Seth Kuttenkuler.

16. During the course of his vacation and while returning to Missoula, Mr. Thommen's truck broke down in Gillette, WY on August 14th. Mr. Thommen had his truck towed to Billings, MT to be repaired.

17. On Sunday, August 16th, Mr. Thommen informed Mr. Kuttenkuler that he was going to be in Billings until his truck could be repaired.

18. Mr. Kuttenkuler suggested to Mr. Thommen that he return to work and call on customers while waiting for his truck to be repaired.

19. On August 17th and 18th Mr. Thommen met with James Hardie customers.

20. On the evening of August 18th, Mr. Thommen's wife informed him that one of their friends whom they vacationed with had tested positive for COVID-19.

21. Mr. Thommen did not attend any further in-person sales calls with James Hardie customer's after his wife informed him of their friend's positive COVID-19 test result.

22. On August 19th, after his truck was repaired, Mr. Thommen returned to Missoula.

23. On August 20th Mr. Thommen was tested for COVID-19 and four days later his test results came back positive.

24. The second claimed reason for its termination of Mr. Thommen was his alleged violation of its newly instituted Cost Control measures. (*Id.*)

25. The alleged violation contends that Mr. Thommen submitted a reimbursement for expenses on August 24th that not had been pre-approved for the amount over the allotted $200 per month and that his actual expenditures were less than what was requested. (*Id.*)

26. During the course of Mr. Thommen's employment, including after April of 2020 when the new Cost Control measures were put in place, the normal practice was for him to submit his expense report on a weekly basis.

27. Mr. Thommen's average expenses for one week ranged between $800 to $1,000 dollars and were sometimes as much as $2,000 depending on travel and the particular needs for the week.

28. Mr. Thommen had never been reprimanded by James Hardie for his expense reporting.

29. Mr. Thommen was scheduled for vacation the week of August 17th, 2020.

30. As a result of Mr. Kuttenkuler's suggestion that he return to work while in Billings, Mr. Thommen set up a number of meetings.

31. Prior to spending any company money on the 17th and 18th, Mr. Thommen informed Mr. Kuttenkuler of his intent to take customers to lunch and dinner, of which he approved.

32. Upon his termination, Mr. Thommen applied for and received unemployment benefits for approximately four months.

33. While on unemployment Mr. Thommen actively sought employment but to no avail.

34. As a result of not being able to find a new job, Mr. Thommen established his own construction business in November of 2020.

## COUNT ONE

## VIOLATION OF THE MONTANA
## WRONGFUL DISCHARGE FROM EMPLOYMENT ACT

35. After their probationary period has ran and in the absence of a written contract for a specific term, an employer needs good cause to terminate an employee in Montana. Mr. Thommen's probationary period had expired and his employment was not covered by a written contract for a specified term.

36. An employer in Montana cannot terminate an employee in violation of its own written policies.

37. James Hardie terminated Mr. Thommen in violation of Montana's Wrongful Discharge from Employment Act ("WDEA").

38. James Hardie's wrongful termination of Mr. Thommen has caused him to sustain monetary damages for which he is entitled to an award of monetary damages as provided by the WDEA.

Wherefore, Mr. Thommen prays that the Court enter judgment in his favor for all damages allowed pursuant to the WDEA and prejudgment interest, together with such other and further relief as the Court deems just and equitable.

DATED this 13th day of August, 2021.

> RVP LAW, PLLC
>
> By: /s/ *Rydel V. Peterson*_____
> Rydel V. Peterson
> 17050 Scheffer Lane
> Frenchtown, MT 59834
>
> *Attorney for Plaintiff Jason A. Thommen*

## JURY DEMAND

The Plaintiff demands trial by Jury.

DATED this 13th day of August, 2021.

> RVP LAW, PLLC
>
> By: /s/ *Rydel V. Peterson*_____
> Rydel V. Peterson
> 17050 Scheffer Lane
> Frenchtown, MT 59834
>
> *Attorney for Plaintiff Jason A. Thommen*